IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAURICE SCOTT,

    Petitioner,               2: 08 - cv - 0979 - LKK TJB

  vs.

M.C. KRAMER, Warden

    Respondent.           ORDER, FINDINGS AND

                                      RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner, Maurice Scott, is a state prisoner proceeding *pro se* with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges the loss of 360 days of worktime credit following a prison disciplinary proceeding where he was found guilty of battery of an inmate with serious injury. Petitioner raises several claims in his federal habeas petition; specifically: (1) Petitioner was not given the right to cross-examine and confront the confidential informant ("Claim I"); (2) Petitioner was not permitted to summon witnesses, submit documents or be assigned an investigative agent at his disciplinary hearing ("Claim II"); (3) Petitioner was not given at least twenty-four hours notice of the scheduled disciplinary hearing ("Claim III"); (4) the senior hearing officer (SHO) improperly imposed a 360-day loss of worktime credit when

1

California regulations only allow for a shorter forfeiture ("Claim IV"); and (5) Petitioner's equal protection rights were violated when his co-defendant only received a loss of 30 days worktime credit and Petitioner lost 360 days ("Claim V"). For the following reasons, it is recommended that Petitioner's habeas petition be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

According to the prison incident and Rules Violation Report (RVR), on January 4, 2005 staff discovered inmate Miller who had sustained serious bodily injury consistent with being the victim of battery. (See Resp't's Answer, Ex. 5 at p. 89.) Miller sustained various injuries including lacerations to the head which required fifteen sutures to close. (See id. at p. 73.) After an investigation by prison staff, it was determined that Petitioner and Miller engaged in mutual combat on January 4, 2005 that ended in Miller being subject to battery with serious bodily injury by Petitioner. (See id.) On January 10, 2005, a confidential informant contacted Captain Moser. The confidential informant provided the following information during his interview:

> The C/I observed inmates Miller and Scott shoving one another, while both were being verbally confrontational. Both inmates began wrestling and Scott ended up getting "slammed to the floor." At this point, both inmates became very agitated and began swinging at each other. Both inmates were striking one another about their head and upper torsos. In speaking with other inmates the source learned that the incident started as "horseplay" and escalated to a fight.

(Id. at p. 44.)

On January 18, 2005, Petitioner was given a copy of the reports related to this purported rules violation. (See Pet'r's Pet. at p. 10; Resp't's Answer at p. 4-5.) Petitioner was assigned an investigative employee. The investigative employee completed his report on January 23, 2005.

The disciplinary hearing occurred on February 5, 2005. The SHO found Petitioner guilty of battery of an inmate with serious injury. (See Resp't's Answer, Ex. 1 at p. 75.) As evidence to support this finding, the SHO cited to the RVR which stated that after an investigation, it was determined that Petitioner and Miller were engaged in mutual combat that resulted in Miller

1   being subjected to battery with serious bodily injury by Petitioner.  (See id.)  Petitioner forfeited
2   360 days of worktime credit.  (See id.)

3   Subsequently, Petitioner filed a habeas petition in the California Superior Court.  In that
4   petition, Petitioner alleged that his due process rights were violated and the forfeiture of his
5   worktime credits violated California regulations because the hearing took place before he
6   received notice of the rejection of the referral by the district attorney.  The Superior Court denied
7   the habeas petition by stating the following:  "the Court finds that Petitioner has failed to state a
8   prima facie case for relief.  (People v. Duvall (1995) 9 Cal.4th 464, 475.)  Petitioner's
9   misconduct was not referred for prosecution.  Nor does Petitioner state what prejudice he has
10  suffered as a result of the hearing not being postponed."  (See Resp't's Answer, Ex. 2.)

11  Petitioner then filed a habeas petition in the California Court of Appeal which raised
12  similar arguments as in Petitioner's petition to the California Superior Court.  The California
13  Court of Appeal summarily denied the petition on June 21, 2007.  (See Resp't's Answer, Ex. 4.)

14  Next, Petitioner filed a state habeas petition with the California Supreme Court.
15  Petitioner's claims to the California Supreme Court included the following amongst others:  (1)
16  his due process rights were violated as he had "the right to cross-examine any and all witnesses
17  whether for you or against you" and had "the right to compel unwilling witnesses to testify as in
18  the right to cross examine your accuser" (Resp't's Answer, Ex. 5 at p. 16.); (2) his constitutional
19  rights were violated when the SHO failed to provide Petitioner with the right to call witnesses
20  and present documents at his disciplinary hearing; (2) his constitutional rights were violated
21  when he was not given proper notice of the disciplinary hearing; and (3) his equal protection
22  rights were violated when his co-combatant received a lesser punishment.  On March 12, 2008,
23  the California Supreme Court summarily denied the petition without discussion or citation.  (See
24  Resp't's Answer, Ex. 6.)  Petitioner then filed another habeas petition with the California
25  Supreme Court that was denied as successive on April 16, 2008.  (See id.)

26  Petitioner then filed his federal habeas petition in May 2008.  The Respondent moved to

3

1 dismiss the federal habeas petition as untimely. In August 2009, it was determined that the
2 federal habeas petition was timely.

### III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a *de novo* review of a petitioner's habeas claims. See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). However, where, as in this case, a state court provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether the state court was objectively unreasonable in its application of clearly established federal law. See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrande, 538 U.S. 63 (2003).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is

the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law. See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

## IV.  EXHAUSTION

In his answer, Respondent argues that the petition should be dismissed because Petitioner failed to exhaust his confrontation claim. (See Resp't's Answer at p. 4.)  Respondent argues that Petitioner failed to assert his confrontation claim in any of his state court habeas petitions. As a result, Respondent argues that the petition should be dismissed because it contains an unexhausted claim.

In order to properly exhaust state court remedies, California state prisoners must present the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his federal habeas petition. See 28 U.S.C. § 2254(b). In this case, Petitioner's state habeas petition to the California Supreme Court raised his confrontation claim. Petitioner asserted in his state habeas petition to the California Supreme Court that among the due process rights due to him at his disciplinary proceeding were "the right to compel unwilling witnesses to testify as in the right to cross-examine your accuser" and "the right to cross examine any and all witnesses

whether for or against you." (Resp't's Answer, Ex. 5 at p. 16.) Petitioner then stated immediately below listing these purported rights that "[t]he Petitioner will respectfully submit the following arguments and these arguments are the axiom of the constitutional merits that should be upheld according to law." (Id.) Later on his state habeas petition, Petitioner argued that his due process rights were violated by "no attendance of witnesses as required by law and was requested by this Petitioner during the course of the hearing." (Id. at p. 17.) Taking these arguments together, Petitioner properly raised his confrontation clause claim to the California Supreme Court. By summarily denying the state habeas petition without comment, the California Supreme Court denied this claim on the merits. See Gaston v. Palmer, 417 F.3d 1030, 1038 (9th Cir. 2005), as amended by, 447 F.3d 1165 (9th Cir. 2006) ("We construe 'postcard' denials such as these to be decisions on the merits."). Thus, the merits of all of Petitioner's claims in this federal habeas petition can and will be analyzed.[1]

### V. PETITIONER'S CLAIMS FOR REVIEW

A. Claim I

In Claim I, Petitioner argues that he was not afforded his due process rights when he was not permitted to cross-examine the confidential informant. (See Pet'r's Pet. at p. 11.) Where a prison disciplinary hearing may result in the loss of earned good time or behavior credits, due process requires that the inmate receive certain procedural protections. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff v. McDonnell, 418 U.S. 539, 564 (1974). Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the disciplinary

---

[1] Even if this claim were to be considered unexhausted, unexhausted claims may "be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State." 28 U.S.C. § 2254(b)(2). A federal court considering a habeas corpus petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable." See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

committee." Id. Third, "there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." Id. Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. Fifth, "where an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from [a]n . . . inmate designated by the staff." Id. at 570.

Nevertheless, a prison disciplinary proceeding does not invoke a right to confront or cross-examine adverse witnesses. See Ponte v. Real, 471 U.S. 491, 510 (1985) (Marshall, J., dissenting); Baxter v. Palmigiano, 425 U.S. 308, 322 n.5 (1976) ("[W]e have held that there is no general right to confront and cross-examine adverse witnesses."); Zimmerlee v. Keeney, 831 F.2d 183, 187 n.2 (9th Cir. 1987) (per curiam) ("Confrontation and cross-examination are not generally required and are left to the sound discretion of the prison official."); see also Wolff, 418 U.S. at 568 ("[I]t does not appear that confrontation and cross-examination are generally required in this context. We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination"). Thus, Petitioner is not entitled to federal habeas relief that his due process rights were violated because he was not allowed to confront and cross-examine the confidential informant.

B. Claim II

In Claim II, Petitioner makes several arguments. First, Petitioner asserts that he was improperly denied the right to be assigned an investigative employee. However, Petitioner was assigned an investigative employee who investigated the disciplinary charge. Petitioner admits that the investigative employee prepared an investigative report. (See Pet'r's Pet. at p. 10.) The

7

1 investigative employee's report indicated that he interviewed several inmates and staff during the
2 course of his investigation. (See Resp't's Answer, Ex. 1 at p. 58, 68.) Petitioner's argument that
3 he was denied due process by not being assigned an investigative employee is contradicted by the
4 record. Thus, Petitioner's argument that he was denied an investigative employee in violation of
5 his due process rights does not warrant federal habeas relief under these circumstances.

6 Next, Petitioner argues that he was denied the right to submit documentary evidence. He
7 alludes to the fact that the SHO prohibited him from presenting documentary evidence as to what
8 constitutes "horse playing." (See Pet'r's Pet. at p. 12.) Petitioner does not submit what this
9 purported documentary evidence contained. Furthermore, even if Petitioner did make such a
10 request to the SHO, he failed to show that he was prejudiced. See Brecht v. Abrahamson, 507
11 U.S. 619, 637 (1993); see also Tien v. Sisto, Civ. No. 07-2436, 2010 WL 1236308, at *4 (E.D.
12 Cal. Mar. 26, 2010) ("While neither the United States Supreme Court or the Ninth Circuit Court
13 of Appeals has spoken on the issue, numerous federal Courts of Appeals, as well as courts in this
14 district, have held that a prisoner must show prejudice to state a habeas claim based on an alleged
15 due process violation in a disciplinary proceeding.") (citing Pilgrim v. Luther, 571 F.3d 201, 206
16 (2d Cir. 2009); Howard v. United States Bureau of Prisons, 487 F.3d 808, 813 (10th Cir. 2007);
17 Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003); Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir.
18 1992); Poon v. Carey, No. Civ. S-05-0801 JAM EFB P, 2008 WL 5381964, at *5 (E.D. Cal. Dec.
19 22, 2008); Gonzalez v. Clark, No. 1:07-CV-0220 AWI JMD HC, 2008 WL 4601495, at *4 (E.D.
20 Cal. Oct. 15, 2008)). Petitioner has not shown what this documentary evidence would have been
21 or how this documentary evidence would have rebutted the evidence relied upon by the SHO in
22 finding Petitioner guilty of the infraction. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)
23 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant
24 habeas relief."). Petitioner has not shown how this alleged documentary evidence would have
25 changed the SHO's finding.

26 Petitioner also argues that he was denied the right to summon witnesses at his disciplinary

1  proceeding. Pursuant to Wolff, an "inmate facing disciplinary proceedings should be allowed to
2  call witnesses and present documentary evidence in his defense when permitting him to do so
3  will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566.
4  Petitioner's argument that he was denied the opportunity to present witnesses at his disciplinary
5  hearing is contradicted by the record. The RVR states that "[s]ubject did not choose to have any
6  witnesses present at his disciplinary hearing." (Resp't's Answer, Ex. 1 at p. 75.) Thus,
7  Petitioner fails to establish a due process violation.

8       In his traverse, Petitioner alludes to the fact that an inmate witness interviewed by the
9  investigative employee constituted an alibi witness and that the SHO failed to give proper weight
10 to the statement of this inmate witness at the disciplinary hearing. (See Pet'r's Traverse at p. 2-
11 3.) Read liberally, Petitioner appears to be arguing that the SHO lacked sufficient evidence to
12 convict him of battery with serious bodily injury based on the inmate's statement. The
13 disposition of a prison disciplinary hearing must be supported by "some evidence" in the record.
14 See Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is
15 "minimally stringent " and a decision must be upheld if there is any evidence in the record that
16 could support the conclusion reached by the disciplinary board. See id. Determining "whether
17 this standard is satisfied does not require examination of the entire record, independent
18 assessment of the credibility of witnesses, or the weighing of evidence." Id. at 455-56.
19 Furthermore, "[r]evocation of good time credits is not comparable to a criminal conviction, and
20 neither the amount of evidence necessary to support such a conviction, nor any other standard
21 greater than some evidence applies in this context." Id. at 456.

22      In this case, the SHO stated the following:

> The SHO has reviewed the confidential information and the
> confidential disclosure and they meet the established criteria of
> CCR §3321. SHO utilized confidential information which
> revealed more than one [1] confidential source provided the same
> information, independently. Inmate Miller . . . received injuries
> that were consistent with being battered. This information meets
> the criteria for reliability because [1] The confidential course has

9

> previously provided information which proved to be true. [2] Other confidential source(s) have independently provided the same information. [3] Part of the information provided is proven true. . . .
>
> Subject was found Guilty based upon a preponderance of the evidence which substantiates the charge of CCR §3005(c), with the specific act of [BATTERY OF AN INMATE WITH SERIOUS INJURY]. This evidence includes: [1] The Rules Violation Report, dated: 01-10-2005 . . . which states in part; ". . . At about 1400 hours, as a result of an ongoing investigation by Facility IV staff, it was determined that on Tuesday, January 10, 2005, that Inmate Miller . . . and [Petitioner] were engaged in mutual combat that ended with Inmate Miller being subjected to battery by [Petitioner], with serious injury . . ."

(Resp't's Answer, Ex. 1 at p. 75.) Here, the SHO made specific findings that the confidential informant's information was credible and corroborated. The SHO noted that there was more than one confidential source and the confidential source has previously provided information which proved to be true. Furthermore, the confidential information disclosure form stated that the identity of the confidential informant could not be disclosed without endangering the source or the security of the institution. (See id. at p. 63.) Thus, the "some evidence" minimally stringent standard was satisfied such that Petitioner's due process rights were not violated when the SHO relied on the RVR which included the confidential informant's information in finding Petitioner guilty. See Zimmerlee, 831 F.2d at 186 (holding that "a prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process when (1) the record contains some factual information from which the committee can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Review of both the reliability determination and the safety determination should be deferential."). Therefore, Petitioner is not entitled to federal habeas relief on Claim II.

   C.  Claim III

In Claim III, Petitioner argues that he was not given at least twenty-four hours notice of his disciplinary hearing. In Wolff, 418 U.S. at 564, the Supreme Court stated that "written notice

of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." In this case, Petitioner was given far more than the required twenty-four hour notice before the disciplinary hearing commenced. Petitioner even admits that he was given copies of the reports on January 18, 2005 (See Pet'r's Pet. at p. 10 ("01-18-05  Petitioner was issued copies of reports").) Subsequently, Petitioner's disciplinary hearing occurred on February 5, 2005, well after the minimum twenty-four hour notice that is required.

Petitioner asserts that he was not given the proper twenty-four hour notice because he requested that his hearing be postponed pending the outcome of referring the matter to the District Attorney. Nevertheless, as outlined above, Petitioner's due process rights were satisfied as he was given at least twenty-four hours notice of the charges against him before the disciplinary hearing commenced on February 5, 2005. Wolff requires nothing more to satisfy Petitioner's due process notice rights. Thus, Petitioner is not entitled to federal habeas relief on this Claim.[2]

D. Claim IV

In Claim IV, Petitioner asserts that the SHO erred in imposing a loss of 360 days worktime credit. (See Pet'r's Pet. at p. 12.) He bases this claim on the SHO's failure to follow state regulations. This claim only raises an issue under state law, and is therefore not cognizable under federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that it is not the province of a habeas court to examine state law questions). Additionally, it is worth noting that 15 Cal. Code. Regs. § 3323(b) provides that battery causing serious injury is a

---

[2] Additionally, the record indicates that the matter was not referred to the District Attorney. Prison officials determined that the matter was "best handled administratively" as the "[s]uspect was identified, based on confidential information." (Resp't's Answer, Ex. 5 at p. 35.) Furthermore, the January 4, 2005 incident report stated that the incident was not "D.A. referral eligible." (Id. at p. 28.)

11

1  Division ""A-1" offense that allows for a credit forfeiture of 181-360 days.

### E. Claim V

Finally, Petitioner argues that his equal protection rights were violated when his co-combatant only received a thirty-day forfeiture of worktime credit whereas Petitioner received a 360-day forfeiture. The Equal Protection Clause requires that persons who are similarly situated be treated alike. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Petitioner can establish an equal protection claim by showing that the Respondent intentionally discriminated against the Petitioner based on his membership in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were treated differently without a rational relationship to a legitimate state purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To state an equal protection claim under this second theory, Petitioner must allege that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from other similarly situated; and (3) there is no rational basis for the difference in treatment. See id.

In the criminal context, "[a] sentencing judge is under no obligation to equalize sentences among coconspirators or codefendants." United States v. Kohl, 972 F.2d 294, 300 (9th Cir. 1992). By analogy, a SHO determining punishments for prison rule violations has no obligation under the Equal Protection Clause to equalize sentences among co-defendants. Furthermore, Petitioner has not even shown that he was similarly situated to his co-combatant. For example, Petitioner's co-combatant was apparently charged with the act of "mutual combat" whereas Petitioner was charged with "Battery of an inmate with [serious bodily injury]." (See Resp't's Answer, Ex. 5 at p. 27.) Thus, Petitioner is not entitled to federal habeas relief on his equal protection claim.

### VI. PETITIONER'S REQUEST FOR JUDICIAL NOTICE

On July 22, 2010, Petitioner filed a "Request for Judicial Notice." (Dkt. No. 44.) Petitioner requests that this Court take judicial notice that his due process rights were violated

12

because his disciplinary hearing "was held on 02/08/2005 8 days before the D.A. rejected this matter." (Pet'r's Request Judicial Notice at p. 1.) Attached to his request for judicial notice Petitioner includes the closure report of his disciplinary hearing as well as a supplemental information report of the disciplinary charges. The latter document was already included as part of the record.

For the reasons stated in supra Part V.C, Petitioner received the due process that was due under Wolff with respect to receiving notice of the disciplinary charge. Petitioner's request for judicial notice is denied. Cf. Fed. Rule Evidence 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). However, to the extent that Petitioner's request for judicial notice can be construed as a request to supplement the record, it is granted.

## VII.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's request for judicial notice is DENIED IN PART AND GRANTED IN PART. To the extent that the request seeks judicial notice, it is DENIED. To the extent that the request seeks to supplement the record, it is GRANTED.

IT IS HEREBY RECOMMENDED that Petitioner's petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are

1 | advised that failure to file objections within the specified time may waive the right to appeal the
2 | District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In any objections he
3 | elects to file, petitioner may address whether a certificate of appealability should issue in the
4 | event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules
5 | Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability
6 | when it enters a final order adverse to the applicant).

DATED: November 9, 2010

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE